**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Shayne W. Bailey, Individually** | ) | **CASE NO. 1:09 CV 1096** |
| **and on behalf of all others similarly** | ) | |
| **situated,** | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **City of Broadview Heights, et al.,** | ) | <u>**Memorandum of Opinion and Order**</u> |
| | ) | |
| **Defendants.** | ) | |

<u>**Introduction**</u>

This matter is before the Court upon plaintiff's Motion for Class Certification (Doc.

15).  For the following reasons, the motion is GRANTED.

<u>**Facts**</u>

Plaintiff, Shayne W. Bailey, Individually and on behalf of all others similarly situated,

filed this Complaint against defendants, City of Broadview Heights, Ohio and Samuel J. Alai,

in his official capacity as Mayor of the City of Broadview Heights, Ohio and in his individual

capacity. The Complaint alleges the following.[1]

On November 12, 2008, plaintiff was seized by a Broadview Heights police officer and summoned to appear in the City of Broadview Heights Mayor's Court on a minor misdemeanor traffic citation.  Plaintiff appeared in the Mayor's Court on November 20, 2008 as required by the summons. On that date, Mayor Alai presided over the Mayor's Court.  Alai heard and decided cases, and imposed judgments and sentences upon Mayor's Court defendants, including plaintiff.

On November 24, 2008, the Clerk of the City of Broadview Heights Mayor's Court issued a criminal complaint against plaintiff for criminal contempt for failure to appear and summoned him to appear in Mayor's Court on December 4, 2008.  Plaintiff appeared in Mayor's Court on December 4 to answer the misdemeanor charge of criminal contempt for failure to appear.  On that date, Mayor Alai presided over the Mayor's Court and heard and decided cases, and imposed judgments and sentences upon Mayor's Court defendants, including plaintiff. (Verified Compl.)

Plaintiff's deposition testimony clarifies these allegations by explaining that he was cited by the Broadview Heights police as a result of his involvement in a motor vehicle

---

[1]     In ruling on a motion for class certification, this Court does not inquire into the merits of the case. *Beattie v. CenturyTel, Inc.*, 511 F.3d 554 (6th Cir. 2007) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.") and *Daffin v. Ford Motor Co.*, 458 F.3d 549, 553 (6th Cir.2006).  For this reason, the Court will not address either party's arguments regarding liability.

accident in that city. The traffic ticket required him to appear in the City of Broadview Heights Mayor's Court on November 20, 2008. He appeared and knowingly and voluntarily pled no contest. Mayor Alai assessed a fine and court costs which plaintiff did not pay on that date. As a result, a complaint for contempt of court was issued and plaintiff appeared in the Mayor's Court on December 4, 2008, as required by the complaint, and pled guilty. (pltf. depo. 27-39)

The Complaint further alleges the following. Alai is the Mayor of the City of Broadview Heights and is its Chief Executive Officer who is responsible for the City's financial condition and revenue production. Alai is also the City's Chief Law Enforcement Officer who is required by the City Charter to see that all ordinances and laws are enforced.

In *DePiero v. City of Macedonia,* 180 F.3d 770 (6th Cir. 1999), the Sixth Circuit held that a Mayor of an Ohio municipality who is its Chief Executive Officer with widespread executive powers and administrative responsibilities lacks authority to preside over the mayor's court because the powers vested to him put him in inconsistent positions and resulted in the denial of due process to those appearing before him as defendants. Because *DePiero* was decided more than nine years before Alai presided over plaintiff's two cases in Mayor's Court, the law was clearly established that Alai would deny plaintiff due process of law. For the same reason, Alai acted in the clear absence of jurisdiction in plaintiff's cases. Additionally, the City of Broadview Heights is liable for the unconstitutional actions of the mayor. (Verified Compl.)

This matter is before the Court upon plaintiff's Motion for Class Certification.

**Standard of Review**

3

"When a person sues or is sued as a representative of a class, the court must—at an early practicable time—determine by order whether to certify the action as a class action." Fed. R.Civ. P. 23(c)(1)(A). The party moving for class certification has the burden of proof. *In reAmerican Medical Sys*., 75 F.3d 1069, 1079 (6th Cir. 1996). District courts have substantial discretion in determining whether to certify the class. *Reeb v. Ohio Dept. of Rehabilitation & Correction*, 435 F.3d 639, 643 (6th Cir. 2006). However, the Court's decision must be based on a "rigorous analysis" of the requirements of Rule 23. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). Under Rule 23 a plaintiff must satisfy all of the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

### Discussion

Plaintiff requests certification on behalf of the proposed class:

All persons who since November 1, 2007 were defendants appearing in cases that were heard and decided in the City of Broadview Heights Mayor's Court during which Samuel J. Alai, Mayor of the City of Broadview Heights, presided over such Mayor's Court and proceeded to find such Mayor's Court defendants guilty and who paid any fine, court costs or fees as a result of being found guilty by Samuel J. Alai.

**(A) Rule 23(a)**

Under Rule 23(a), the party seeking class certification must show:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Defendants do not specifically contest the first three elements of 23(a). The Court finds that they are satisfied.

4

### 1. Numerosity

"The numerosity requirement is satisfied when a class contains so many members that joinder of all would be impractical... The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Thacker v. Chesapeake Appalachia, L.L.C.,* 2009 WL 2407614 (E.D.Ky. August 5, 2009) (citing *Gen. Tel. Co. v. EEOC,* 446 U.S. 318, 330 (1980).  The parties agree that the proposed class has about 1240 members.  In *Bacon v. Honda of America Mfg., Inc.,*370 F.3d 565 (6th Cir. 2004), the Sixth Circuit found that a proposed class of 800 met the numerosity requirement.  The Court finds that plaintiff has satisfied the first prerequisite under Rule 23(a).

### 2. Commonality

The second precondition under Rule 23(a)(2) requires the presence of questions of law or fact that are common to the class.

"The commonality test is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class. "*In Re American Medical Systems, Inc.,* 75 F.3d 1069, 1080 (6th Cir. 1996) (internal quotations and citation omitted).  "On the other hand, not every common question will suffice because, at a sufficiently abstract level of generalization, almost any set of claims ... could display commonality. Rather, there must be "a common issue the resolution of which will advance the litigation."  *Reeb v. Ohio Dept. of Rehabilitation and Correction*, 81 Fed.Appx. 550 (6th Cir. 2003) (citing *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir.1998) ).

Plaintiff asserts that the proposed class share the common fact that they each were defendants in the City of Broadview Heights Mayor's Court where Mayor Alai presided and

5

found plaintiff and each class member guilty of criminal offenses, and imposed fines, court costs, and fees. Additionally, plaintiff and each class member share a common question of law, namely whether Alai denied plaintiff and the class members due process by presiding over the Mayor's Court in light of *DePiero, supra.*  The Court agrees that commonality has been established.

### 3. Typicality

Typicality means that plaintiff's claims arise from the same event or course of conduct that give rise to the claims of other class members and are based on the same legal theory. *In re Am. Medical Sys*., 75 F.3d 1069, 1082 (6th Cir.1996) (citations omitted). "There must be some connection, in other words, between the merits of each individual claim and the conduct affecting the class." *Romberio v. Unumprovident Corp.,* 2009 WL 87510 (6th Cir. January 12, 2009).  "On the other hand, ...the typicality requirement is not satisfied when a plaintiff can prove his own claim but not necessarily have proved anybody else's claim." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554 (6th Cir. 2007) (citing *Sprague*, *supra*).

Plaintiff asserts that his claim involves the same legal theory as that of every member of the class and the relief sought is common to the class as a whole.   In particular, he asserts that Alai denied him and every class member due process by presiding over the Mayor's Court when clearly established law denied him the authority to do so. Plaintiff further contends that because the resolution of Alai's liability as to plaintiff will resolve the issue of liability as to claims brought by the class members, plaintiff's claim is typical.  This Court agrees and finds that typicality has been satisfied.

### 4. Adequacy of Representation

Defendants argue that this element is not satisfied.

The Sixth Circuit has articulated two criteria for determining the adequacy of representation: " '1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.' " *In re Am. Medical Sys.*, 75 F.3d at 1083 (quoting *Senter v. General Motors*, 532 F.2d 511, 525 (6th Cir.1976)).

Defendants argue that the second element is not satisfied because plaintiff lacks the financial resources to serve as an adequate class representative. Defendants point to plaintiff's deposition wherein he testified in pertinent part to the following. Plaintiff admits that in early September 2009, a complaint for foreclosure was filed by the mortgage holder against his home and he has not made his mortgage payment of $900 in approximately six months. In May 2008, plaintiff filed for bankruptcy with approximately $80,000 in credit card debt. (pltf. depo.15-18)

Plaintiff testified that he was willing to pay the costs for this lawsuit but had limited knowledge of what these costs may be and what his responsibilities are as class representative. He admitted that he did not know that he may be required to pay the cost of sending

written notice to the over 1200 potential members of the proposed class. He expressed a willingness to pay for the costs of deposing defendants' representatives in this case, but he admitted that he had no idea how much it would cost to do so. (*Id.* 23-27).

Plaintiff also testified that there is no written agreement between him and his attorneys requiring his attorneys to fund the cost of the lawsuit. He testified that he has a verbal

7

agreement with attorney O'Neill to pay all of his fees and costs and that he is currently

attempting to do so by making periodic cash payments to Mr. O'Neill "whenever he can," and

he has no agreement with his attorneys as to any hourly rate. (*Id.* 21-22).

For the following reasons, the Court does not find that plaintiff is an inadequate

representative due to his financial condition.

Defendants rely on *Apanewicz v. General Motors Corporation,* 80 F.R.D. 672

(E.D.Penn.1978), where the plaintiff stated that he was willing to pay all the costs of the suit

but he had refused to answer questions at deposition that would show his appreciation of the

costs of notice that might be involved and whether some other arrangement for bearing the

costs had been made.  Plaintiff also displayed a lack of knowledge of the facts of the case.  On

that basis, the court found that he had not satisfactorily demonstrated that he would

adequately represent the class.  In the case herein, on the other hand, plaintiff has asserted in

his reply brief that the cost of sending notice by first class mail to 1240 class members is

$545.60, and that the case will not require "massive amounts" of money for discovery and

expert witnesses.  Additionally, plaintiff's counsel states that he/she "provides absolute

assurance to the Court that adequate funding is available through lawful and ethical means to

provide notice..."  (Doc. 18 at 5)      While defendants counter that there is no evidence that

an arrangement of this nature is in place, the Court is not inclined to conclude that sufficient

funding does not exist in the absence of a written agreement.

Defendants also cite to *Sanderson v. Winner,* 507 F.2d 477 (10th Cir. 1974).  There, the

defendant sought production of income tax returns and financial documents on the ground

that they were relevant to whether plaintiffs were adequate class representatives.  The court

8

noted that "the class action is unique and we see the necessity for the court to be satisfied that

the plaintiff or plaintiffs can pay the notice costs." Nonetheless, the court did not require

production of the documents.  The court stated that the relevant lower court decisions which

considered the plaintiff's ability to pay involved antitrust violations where plaintiffs had

sought to represent a class of all new car purchasers in the United States.  The court noted that

while there may have been legitimate concern about the ability of the plaintiffs to successfully

lead a class of such magnitude in those cases, those considerations were not present in

*Sanderson*.  Likewise, the proposed class of 1240 herein is not massive and is of a relatively

limited size.

Defendants also cite to *In re ML-Lee Acquisition Fund II, L.P.,* 149 F.R.D. 506

(D.Del. 1993), which actually supports the Court's conclusion that the size of the proposed

class does not warrant denial of certification based on plaintiff's financial condition.  In *In re*

*ML-Lee Acquisition Fund*, unlike the case herein, plaintiffs alleged federal securities laws

violations and the court recognized that they had to "bear the substantial costs of serving

notice on more than 33,000 potential class members, as well as the costs of engaging in

extensive discovery."  Thus, the court compelled production of information regarding

plaintiffs' financial history given that defendant had demonstrated "a legitimate concern"

about their ability to successfully lead the class.

In a similar vein, in *Rode v. Emery Air Freight Corp.,* 76 F.R.D. 229 (D.C.Pa. 1977),

also cited by defendants, plaintiff purported to represent a nationwide class of females who,

*inter alia,* were employed by defendant or were dissuaded from applying for employment due

to defendant's discriminatory reputation.  The court recognized that the class included "an

9

almost limitless set of members."  Thus, the court concluded, "When the scope of the

purported class would impose discovery demands of the magnitude presently possible, the

financial status of the representative plaintiff is relevant to class certification."  *Id.* at 232.

Again, the class herein, in contrast, is of a much smaller and limited size.

Finally, defendants refer to *R.W. Brooks v. Southern Bell Telephone & Telegraph Co.,*

133 F.R.D. 54 (S.D.Florida 1990), where the court found that the plaintiffs did not meet the

adequacy requirement due to their inability to provide adequate financing to maintain the

action.  The court, however, noted that "substantial additional expenses will be incurred

during the course of the litigation" and plaintiffs had already "balked at the prospect of

expending additional funds."  No such showing has been made here by defendants.

For these reasons, the Court does not find that plaintiff's financial situation precludes

him from serving as an adequate class representative and this element is satisfied.

For these reasons, the prerequisites of Rule 23(a) have been met.

**(B) Rule 23(b)(3)**

Plaintiff pursues this action under Rule 23(b)(3).  "To qualify for certification under

Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: [1]

[c]ommon questions must predominate over any questions affecting only individual members;

and [2] class resolution must be superior to other available methods for fair and efficient

adjudication of the controversy." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)

(internal quotation marks omitted).

Defendants do not dispute the first requirement of this rule. The Court agrees with

plaintiff that common questions of law or fact predominate.  Namely, plaintiff alleges a single

factual theory of wrongdoing and seeks to recover on the legal claim that defendants violated the due process rights of the class members. The dispositive facts and law are the same as to each class member.

Defendants argue that the second requirement of Rule 23(b)(3) has not been satisfied because plaintiff cannot demonstrate that a class action is superior to the alternative of a "test case" for the fair and efficient adjudication of this controversy. Defendants assert that a test case is superior herein because: 1) plaintiff lacks adequate resources to fund the costs of a class action, 2) this case essentially involves a question of law that can be resolved with dispositive motions, and 3) notifying class members of this action before a decision on the merits may result in defendant Broadview Heights unnecessarily losing revenue (because class members may conclude that they have no obligation to pay their assessed fines and fees) and defendant Alai needlessly suffering damage to his reputation. On this basis, defendants ask the Court to stay its ruling on class certification pending a ruling on the merits of the case. Plaintiff opposes the use of the test case but offers no substantive discussion.

Defendants rely exclusively on *Katz v. Carte Blanche Corp.,* 496 F.2d 747 (3rd Cir. 1974), the 1974 "seminal" Third Circuit decision addressing the test case approach.[2] There, the plaintiff, on behalf of a large proposed class, sought damages against a national credit card company under the Truth in Lending Act for failure to make certain disclosures regarding computation of finance charges. The appellate court held that a test case would be a superior

---

[2]     Defendants cite to *Corum v. Fifth Third Bank of Kentucky, Inc.,* 2004 WL 594996 (W.D.Ky. March 3, 2004). In that case, however, the court did not decide whether or not to use the test case. In fact, among other things, the court indicated that it would decide once "everyone agrees to the test case as set out [in the opinion.]"

method under the particular facts of that case.  The test case alternative postpones

determination of class status pending the outcome of the individual action in which

defendant's liability is resolved.  A ruling on class certification proceeds only upon a finding

in plaintiff's favor on liability.

      The Court does not find the test case approach to be suitable here.

      The proposed class herein is not so large as to make a test case necessary.  *See Pruitt*

*v. Allied Chemical Corporation,* 85 F.R.D. 100 (E.D.Va. 1980) (The proposed class of 30,000

members was not "so large as to make a test case necessary."), *In re Folding Carton Antitrust*

*Litigation,* 75 F.R.D. 727 (N.D.Ill. 1977) (The court recognized that the test case is

inappropriate and unnecessary in a suit in which the class numbered in the thousands rather

than in the millions.), and 2 *Newberg on Class Actions* § 4:27 (4th ed.) ("[A] test case is

ordinarily inappropriate when small individual claims are involved, because unless the suit

was brought by a legal services unit on a non-fee basis, there is not enough incentive for the

private bar to commence litigation in the absence of a class action.") *Compare O'Neill v. City*

*of Philadelphia,* 1992 WL 301261 (E.D.Pa. Oct. 15, 1992) (The proposed class of over 2

million people made the use of the test case a practical approach.) and *Perez v. Government of*

*the Virgin Islands,* 109 F.R.D. 384 (D.C. V.I. 1986) (The court found that a test case was

superior to a class action in a case involving thousands of claims resulting from the collapse

of an insurance company.)  The class herein of 1240, whose claims are small, does not

necessitate a test case.

      Nor do defendants' other justifications for utilizing the test case approach mandate its

application here. As discussed above, the Court has not found that plaintiff's financial

condition precludes him from pursuing this class action.  Furthermore, defendants assert that the City of Broadview Heights may unnecessarily lose revenue if class members, upon notice, decide to withhold their assessed fees and fines.  Defendants have not persuaded this Court as to the likelihood of this occurrence.

For these reasons, the Court finds that plaintiff has satisfied both provisions of Rule 23(b)(3).

**Conclusion**

For the foregoing reasons, plaintiff's Motion for Class Certification is granted.

IT IS SO ORDERED.

 /s/ Patricia A. Gaughan_____
PATRICIA A. GAUGHAN
United States District Judge

Dated: 11/3/09

13